JAMES, J.,
dissenting:
¶ 16. I agree with the statements of the law in the majority opinion and the specially concurring opinion.[5] However, it appears from the record that the chancellor properly considered the legal presumption that it is in a child’s best interest for the natural parent to have custody. The chancellor stated in her bench opinion that “[i]t is only that behavior of a parent [that] clearly causes danger to the mental or emotional well being of a child[,] ...” and “the presumption is in favor of awarding custody [to] the natural [parent].... ” The record indicates that the chancellor considered the totality of the circumstances, and that the presumption of awarding the child to the natural parent had been overcome by clear and convincing evidence.[6] The chancellor was reluctant to extensively criticize the father, and she commended him for showing love for his daughter.
¶ 17. There were several parties involved in the assessment of the minor child according to the guardian ad litem’s report: family-protection specialists with the Mississippi Department of Human Services (DHS); a grief-support counselor; and the pastor of the church where the minor child attends services. Also, the pleadings in the chancery court were styled James Wilson v. Pearlean Davis and Mississippi Department of Human Services, which means DHS was involved in some manner.
¶ 18. Relevant facts entered into evidence were:
(1) The minor child was three years of age when the natural father came into her life. This shows that the father abandoned the child during the early stages of her life, pursuant to Mississippi Code Annotated section 93 — 15—103(3)(b) (Rev.2004).
(2) The father came into the minor child’s life after paternity had been established. The child was eight years of age at the time of the trial. The minor child is presently nine years of age, and she will be ten later this year.
(3) The father was seventy years of age at the time of the trial, and his wife was thirty-seven. There are three stepchildren — one girl and two boys. The two boys, ages ten and fourteen at the time of the trial, had anger-management issues, and they were receiving behavior therapy.
(4) The father has been married three times, and he had only been married ten months to his present wife at the time of the trial.
(5) The father smokes, but he states that he only smokes outside because his two stepsons have bronchitis.
*1285 (6) The father has four adult children, but the record does not show that he raised any of the children, or that he has parenting skills.
(7) The father’s present wife and the minor child’s deceased mother were friends, and it caused problems in the past.
(8) In addition to counseling, the minor child has been writing poems to her mother after her death. However, the child is on the honor roll.
(9) The minor child calls her father by his first name and calls one of her mother’s friends “dad.”
¶ 19. It is clear from the record that the minor child was in need of a protective order of custody. The child was bonded with her maternal grandmother, and since her mother’s death, has been living in her mother’s home with her grandmother and sister. Relatives are favored over nonrela-tives when there are issues to be settled with the natural parent before the natural parent can receive custody. This prevents a child from being in DHS custody and being placed in a foster home.
¶ 20. Here, it is in the best interest of the minor child that the father yield to the best interests of the child and work out a plan to make sure that the child’s best interests are protected. This is suggested in the guardian ad litem’s report:
The child needs the relationship with her father, but she needs time to transition. The child needs time to build or strengthen the relationship with her father because she knows him as “James” and not as her dad. [I]t is the recommendation of this guardian ad litem that [the minor child] remain with her grandmother and [be] housed with her sister in order that they may be able to deal with the death of her mother, and ultimately ... go into counseling with the father in order that she may strengthen the relationship, and at such time as the court deems appropriate to make that transition for the minor child.
¶ 21. The chancellor left the door open for the natural father by adopting the guardian ad litem’s report by reference so that the father could develop a plan to gain custody of his child if at all possible.
FAIR, J., JOINS THIS OPINION.

. The father filed a petition for modification of custody instead of a petition for custody, and on appeal he complains about the procedure.

. This was in the bench opinion, which satisfied one of the requirements to overcome the natural-parent presumption, namely that the parent's conduct be clearly detrimental to the child’s health. See Sellers v. Sellers, 638 So.2d 481, 486 (Miss.1994).